OPINION
Plaintiff-appellant Penny Floyd, Administrator of the estate of John C. Floyd, deceased, filed an intentional tort action against John Floyd's employer, defendant-appellee, Master Industries, Inc. (hereinafter "Master Industries"), for injuries John received while on the job which resulted in his death. Master Industries filed a motion for summary judgment. The Darke County Court of Common Pleas sustained the motion holding that Penny Floyd had failed to establish that John Floyd was required to perform a dangerous task. This appeal is taken from the summary judgment rendered against Floyd.
We conclude, from an examination of the record, that there are no genuine issues of material fact upon which reasonable minds could differ, and therefore, we find that the trial court did not err in granting summary judgment. Accordingly, the judgment of the trial court is Affirmed.
 I
John Floyd was employed at Master Industries as a process technician whose duties including trouble-shooting problems with machinery. On January 26, 1997, John was killed while working on a machine known as "Stokes Machine No. 15."
The machine, a three hundred ton hydraulic molding machine, may be entered from the front and rear portions of the mold; however, there are gates on both points of access. The front gate of the machine had three safety features which operated independently when the front gate was opened to prevent the mold from closing. The machine was also manufactured with a rear guard designed to protect against entry into the mold area on the backside of the machine when the machine was in operation. It also prohibited mold closure when the fixed rear guard was removed. According to Floyd, the rear gate was modified in such a manner as to allow the machine to cycle with the rear gate open. For purposes of summary judgment only, Master Industries conceded that the rear gate was modified.
At some point on January 26, 1997, the mold began producing parts improperly. John Floyd was called in to address the problem. At first, Floyd entered the machine from the front gate. Later, he apparently returned and entered the machine from the back gate. While Floyd was leaning into the mold section from the rear gate area, the machine cycled causing both sides of the mold to close. Floyd's head was caught between the mold halves causing his death.
OSHA was called after the accident. The agency inspected the molding machine and issued citations in regard to the accident. The matter was settled when Master Industries agreed to pay a fine without any admission of liability.
Penny Floyd filed this intentional suit against Master Industries in November, 1997. Thereafter, Master Industries filed a motion for summary judgment. The motion was granted on April 9, 1999. Floyd appeals.
 II
Floyd's sole Assignment of Error states as follows:
 THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF MASTER INDUSTRIES, INC. AND AGAINST PENNY FLOYD, ADMINISTRATOR OF THE ESTATE OF JOHN C. FLOYD, DECEASED BY FINDING "THE PLAINTIFF HAS NOT PROVED "SPECIFIC FACTS" AS REQUIRED BY VAN FAUSSEN [SIC] TO ESTABLISH A GENUINE ISSUE OF FACT THAT THE EMPLOYER ACTED TO REQUIRE THE EMPLOYEE TO CONTINUE PERFORMING THE DANGEROUS TASKS AS REQUIRED UNDER PART 3 OF THE FYFFE TEST."
Floyd contends that the trial court erred in finding that she had failed to present evidence to support her claim that the third prong of the test for an intentional tort was met. Floyd argues that Masters required John Floyd to perform a dangerous task because it required him to work on Stokes Machine No. 15 as part of his job, and that he had no training in regard to that machine. She also refers us to the affidavits of two experts as support for her argument. Finally, she argues that the citations issued by OSHA are dispositive of this case.
In order to prove an intentional tort, an employee must meet the three-part test set forth by the Ohio Supreme Court in Fyffev. Jeno's, Inc. (1991), 59 Ohio St.3d 115. The Fyffe test requires a person alleging an intentional tort to demonstrate the following:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;
 (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and
 (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Id., at 118.
With this standard in mind, we turn to the issue of whether the trial court erred by granting summary judgment in favor of Masters. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370.
In our opinion, the evidence before the trial court, when viewed in a light most favorable to Floyd, fails to create a genuine issue concerning the third prong of the intentional tort test set forth in Fyffe, supra.
 Floyd's assertion that John Floyd received no training in regard to the molding machines is not supported by the record. Instead, the record does indicate that he received training on basic injection molding, mold handling, cleaning and safety, job safety, and basic "well-known safety procedures for working between mold halves." Furthermore, he received a "Process Technician Training Manual" containing job safety instructions. Moreover, there is evidence in the record to support a finding that Floyd was trained to know that no one was to perform work inside a machine unless the front gate of the machine was open, the pump motor was shut off, the machine was placed in manual operation mode, and the machine operator was informed that the work was being performed. The evidence also shows that at the time Floyd was working from the back of the machine, he did not engage any of these safety mechanisms, and was, therefore, violating safety procedures at the time of his death. Furthermore, the record supports a finding that no one had ever observed Floyd working on the machine without engaging all safety mechanisms. Finally, the record shows that had the motor pump been shut off and had the front gate been opened, the accident could not have happened.
Floyd is correct in her assertion that John Floyd was required, as part of his job, to trouble-shoot problems with the molding machines. However, there is no evidence in the record to indicate that Master Industries required Floyd to perform his job without taking the appropriate safety precautions; to the contrary, he was trained to use numerous safety precautions, but chose not to. There is no evidence to suggest that the accident would have occurred had Floyd followed company policy and his training. Floyd next argues that the affidavits submitted by her experts affirmatively establish that a genuine issue of fact exists in regard to all three of the Fyffe prongs. Both expert affidavits state that in their opinion Master Industries acted to require Floyd to perform a dangerous task. They both based their opinions upon their "education, background, experience and inspection of" the molding machine.
Upon closer review of the affidavits, it is apparent that the experts did not base their opinions in regard to the third Fyffe
prong upon any facts. Instead, the affidavits merely set forth the legal language of Fyffe, while failing to state upon what facts, if any, they relied. Therefore, in light of the fact that the affidavits fail to set forth any factual allegations to support their conclusion that Floyd was required to perform the task without engaging proper safety mechanisms, we find that they fail to establish the third prong of the intentional tort test. Averments in an affidavit reciting conclusory contentions of law, without setting forth facts upon which those contentions are based, are not sufficient to establish a genuine issue of material fact. Ohio Poly Corp. v. Packaging Handling Supplies Co.
(1988), 44 Ohio App.3d 88, at 91.
We next address Floyd's claim that the citations issued by OSHA are evidence that the modifications made by Master Industries to the rear gate safety design rendered the machine dangerous and made it substantially certain that Floyd would be harmed by working on the machine from the rear.
As set forth in the settlement between Master Industries and OSHA, Master Industries merely agreed to pay a fine without any admission of liability. Therefore, "the disposition of the OSHA citation is irrelevant as to the employer's intent." Heyman v.Stoneco (Aug. 2, 1991), Wood App. No. 90WD071, unreported. See, also, Foster v. Spectra-Physics Laserplane (Aug. 28, 1998), Montgomery App. No. 16884, unreported (violation of OSHA regulations does not, by itself, create a genuine issue of material fact with respect to the issue of substantial certainty). Furthermore, the OSHA citations do not raise a genuine issue of material fact whether Master Industries required Floyd to perform a dangerous task without using correct safety precautions. Therefore, we find this claim to be without merit.
Since we find that Floyd failed to establish a genuine issue of fact with respect to the third prong of the Fyffe test, we find it unnecessary to determine whether there was a genuine issue of fact with respect to the first or second prongs of the test. Because a plaintiff must satisfy all three prongs, a failure of proof with respect to any one prong renders immaterial any disputes of fact with respect to the other prongs.
Floyd's sole Assignment of Error is overruled.
 III
Floyd's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
WOLFF and KOEHLER, JJ., concur.
(Honorable Richard N. Koehler, Retired from the Twelfth District Court of Appeals, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Alfred J. Weisbrod
William W. Ford, III
Mark J. Chumley
Hon. Jonathan Hein